[Civ. No. 23272.   Second Dist., Div. One.   Nov. 18, 1958.]

HAROLD J. DRIZHAL, Respondent, v. MILDRED DOLORES DRIZHAL, Appellant.

Levy Bernard, Jaffe & Samuel R. Tannenbaum for Appellant.

A. A. Goldstone for Respondent.

FOURT, J.—This is an appeal from an order denying a motion to vacate and set aside a default judgment.

The plaintiff, sometimes hereinafter referred to as the husband, brought an action in divorce in Los Angeles County. He had consulted his attorney about bringing an action in divorce in February, 1957, under the name of Harold B. Hall, a name he had gone under or used for over 20 years. His wife has used the name Mildred Dolores Hall, and the four children of the marriage "were known under and used the name Hall." He did not tell his attorney at that time that his true name was Harold J. Drizhal, and that he and his wife had been married under the name of Drizhal. He further stated that he had become "so accustomed to the name of Hall that he forgot his true name." The action was filed under the name of Hall. In the complaint it was charged that the wife had been guilty of extreme cruelty, that there was certain community property and that there were four children of the marriage. The husband sought the property, a divorce and the custody of the children. Service was by publication of the summons.

The mother of the wife petitioned for an order for the appointment of a guardian *ad litem*. A commissioner made an order wherein the mother was appointed the guardian *ad litem* on April 5, 1957, and such order with the petition was filed on April 9, 1957. On April 24, 1957, the guardian filed an answer and cross-complaint. Thereafter, the husband demurred to the answer and the cross-complaint and made a motion to strike the answer and cross-complaint. The husband set forth in an affidavit that after the motion to strike and the demurrer were filed, but before the matters were heard in court, as he was taking some clothing out of a chest for one of the children he had come across the marriage license; that he then read the license and recalled that he was married under the name of Drizhal, whereupon he advised his attorney of his true name. His attorney had then advised him that in all probability the action filed under the name of Hall and the publication of summons and service thereunder were defective and that a new action would have to be filed.

The demurrer to the cross-complaint was sustained and

10 days were given within which to amend. The demurrer to the answer was overruled. The motion to strike the answer was denied.

Upon leaving the courtroom after the hearing of the order to show cause, the attorneys for the respective parties discussed the matter, and apparently the attorney for the husband told the attorney for the guardian of the wife that the true name of the parties was Drizhal and not Hall; further that the parties had resided in the Santa Monica district, and that another action would be filed under the proper name in the Santa Monica branch of the superior court. Counsel for the guardian of the wife stated that he knew of the correct name and he attempted to dissuade the attorney for the husband from proceeding as indicated. Further, the attorney for the husband, on December 9, 1957, told the attorney for the guardian of the wife of the proceedings which were had in the case in Santa Monica, and that there had been no effort to mislead him or anyone else.

The attorney for the guardian of the wife set forth in an affidavit that the attorney for the husband did tell him, upon leaving the courtroom at the conclusion of the order to show cause in the first case, that he probably would file a new complaint in Santa Monica under the name of Drizhal, and that as the attorney for the guardian he had related to the attorney for the husband that there was no necessity for such action; that he as the attorney for the guardian would stipulate to amend the complaint to show the true names of the parties; further, that he, the attorney for the wife, had heard nothing further from the attorney for the husband about the matter.

The second action was filed in Santa Monica branch of the Superior Court of Los Angeles County on May 23, 1957, and publication of summons was ordered. A default was regularly entered and a default judgment was ordered and decreed on October 22, 1957, wherein the community property of the parties, a divorce and the custody of the minor children was awarded to the husband.

The testimony at the hearing to secure the interlocutory decree of divorce showed, among other things, that the parties separated November 15, 1956; that on that date the wife left the home of the parties while the husband was asleep, he having worked all of the previous night. When the husband awoke at about 12:45 p. m., the wife was gone. He found a

note in the wife's handwriting which she had left for him and which read as follows:

"Dear Bing:—

"I have an appointment uptown for 12:30 P.M. I shall be back in an hour at the most. Don't go to work until I see you. I want to talk to you about something very important.

"I've been thinking things out.

"See you at 2:00.

"Lots of Love
Millie."

The husband has never seen the wife since that time.

On the day the wife left she apparently went to the Bank of America, Culver City, and withdrew $100, as shown by her bank book. She was seen in a department store about 1:20 o'clock p. m. of the same day. On December 23, 1956, the police found the car in which she had left home completely abandoned. Prior to her leaving the wife had been staying away from home and going to "beer joints," leaving the children alone and associating with other men. On a previous occasion she had stayed away from home for about six weeks, and she had recently stated that she was leaving. The husband sought the assistance of the police, the Federal Bureau of Investigation, and a television network in an effort to urge her to return home to her family. The husband immediately notified Robert Wood, the wife's son by a previous marriage, and her mother, Adeline Lucas, who also tried to find the wife, but without success. The testimony further showed that the husband and father was at that time caring for the children in the house formerly occupied by all of the parties.

In the Santa Monica branch of the superior court, on December 13, 1957, a petition for the appointment of a guardian *ad litem* was filed by the mother of the wife, wherein she set forth that her daughter, the defendant, about November 15, 1956, was suffering from anxiety and fear of the husband, and that she disappeared from her residence and had not been heard from since; that missing person's reports had been circulated by the law enforcement agencies and that they had been unable to locate her; that at the time of her disappearance she was under the care of a doctor for emotional disturbances and that it was the opinion of the mother of the defendant "that either her daughter is suffering from amnesia or is a victim of foul play." The mother

of the wife was appointed the guardian *ad litem*. There was filed simultaneously a notice of motion to set aside the judgment of default and to file an answer to the complaint upon the grounds that the "judgment was taken against said defendant through mistake, surprise and inadvertence."

There is no contention that Goldstone, the attorney for the husband, violated any understanding or stipulation or oral agreement. The only assertion of Tannenbaum, the attorney for the guardian *ad litem*, in that connection is that Goldstone did not give him "the courtesy of a telephone call" and tell him the second action had been filed. Tannenbaum did not change his position because of anything Goldstone told him. Had Tannenbaum desired to be informed of any such action which was to be filed, he could have asked Goldstone to so inform him, and had Goldstone then advised Tannenbaum that he would tell him if any action was so filed and then later failed to comply with his promise, the situation might be different.

There is nothing set forth in the affidavit of Tannenbaum, or otherwise, which would seem to show any mistake upon the part of anyone; nor is there any showing of inadvertence or excusable neglect.

At the hearing on the motion to set aside the default judgment, the testimony of a witness was taken. Affidavits were submitted and the cause argued, and thereupon the court denied the motion to vacate the judgment.

█ The sole question is whether the court abused its discretion under the circumstances of the case. The appellant has not brought before this court the transcript of the testimony had and taken at the hearing, and as a consequence we are not advised as to what the witness or witnesses stated at such proceeding. The affidavits contained conflicting statements and the trial court properly resolved such conflicts. We believe that, under the circumstances of this case, there is no showing of an abuse of discretion by the trial court.

It is too well settled to be questioned that the trial court's exercise of discretion should not be overturned unless and until there is a showing of some abuse of that discretion. The court apparently believed what the plaintiff and his attorney set forth in their affidavits and apparently believed the testimony of the witness or witnesses who testified at the hearing.

The order is affirmed.

White, P. J., and Lillie, J., concurred.